Case No. 15-7024 et al., Rivka Livnat, individually and as personal representative of the estate of Ben Yosef Livnat et al. appellants, v. Palestinian Authority, aka the Palestinian Interim Self-Government Authority. Ms. Weber for the appellants, Mr. Berger for the appellee. Good morning. Good morning, Your Honors, and may it please the Court. I'd like to begin by addressing the Second Circuit's recent decision in Sokolow because I think it provides a useful framework here. Like the Court below, the Second Circuit took a federal statute designed to provide justice for American citizens harmed by international acts of terrorism and left it unenforceable in the very class of cases for which it was intended. And as a threshold matter, these decisions are wrong because the PA does not have due process rights, but even more fundamentally, these courts incorrectly apply limitations on the power of the states and apply them to the power of the federal government, which is particularly inappropriate in this case and in ATA cases where the federal interests in national security and foreign relations are invoked, interests that are far beyond the scope of the state's authority. Are you expressing, are you talking now first about the question of whether due process applies at all? Your Honor, of course you are. Number one, does due process apply? Number two, if it does, is it general jurisdiction? Number three, is it specific? Will you make it clear as you're going along which one you're talking about? Yes, absolutely, Your Honor, and I apologize for not doing that. So it's true that we first argue that the PA is not entitled to due process rights as a foreign government under this Court's holding in price, and I'd like to return to that a little bit later if I may. I was just pointing the Court's attention to that the Court's holding, the Court below's holding on specific jurisdiction is particularly inappropriate in light of the fact that it applied 14th Amendment case law to this Fifth Amendment case. Well, now, all right, since you want to start that way, let's assume there's due process applies. I know you argue against that. Right. Which do you think is your strongest argument, stronger argument, general jurisdiction or specific jurisdiction? You win either way. Which is your strongest? Right. We think the clearest path is under specific jurisdiction, and that's because you have the federal interest at stake here in protecting U.S. nationals is at its apex, and when balanced against the burden on the PA, and to be clear, the PA has never argued that it would be unfair for it to defend itself in the United States. It has lawyers. It receives billions of dollars in aid from the United States. There's not really a fairness argument there, but when you balance those interests and also consider the nature of the tort, which is terrorism, you know, and while the- But this case doesn't look anything like Calder, right? I mean, we don't have anything like Calder here, and that's kind of a marker we have to follow, isn't it, per specific jurisdiction here? So I have two responses to that. First, Calder again involved the power of the states to haul an out-of-state defendant into court. And by the way, no one's recognized your 14th Amendment, 15th Amendment due process distinction. It's clever. It's interesting. We'll make for great law review articles, but we would be making new law here. So just tell me why Calder doesn't point us in a very different direction than where you're pointing us on specific jurisdiction. Or is your argument that you have to come up with a different type of specific jurisdiction under Fifth Amendment than 14th Amendment? Does it rest on that? It doesn't completely rest on that, although that's certainly, and I would note there are other courts that have recognized the distinction when it's a Fifth Amendment case. But to your point, there are Calder-like aspects of this case in that, like Calder, the tort of terrorism, like libel, it's not a localized harm. It's a harm intended to a greater audience. It's intended to have ripple effects for a broader audience. And so just as the harm in Calder wasn't solely in the writing of the article, the harm was experienced when people read the article. But you don't have any evidence that this attack was part of this strategy to affect U.S. public opinion or foreign policy strategy. You made a very conclusory allegation, but there's no evidence that this attack has been linked to changing United States public opinion or foreign policy. And that seems to me that's very different than Calder. Well, we have an allegation that we supported with an expert declaration from Professor Atticott. And to be clear, this case was dismissed at the motion to dismiss. Am I wrong? I may be wrong. Professor Atticott didn't say anything about this specific attack. Professor Atticott discussed how this attack was part of a larger PA policy and practice of using acts of terrorism to influence important policy. He said this specific attack. He talked about the general practice of encouraging and facilitating acts of terrorism. He did not talk about this specific terrorist act here. That's what I'm talking about. But in our complaint, we do allege this specific attack was part of the larger pattern of facilitating terrorism was a goal and part of influencing United States policy. Your complaint doesn't allege that this attack was done knowingly targeting U.S. citizens or residents, right? It does not. And under our theory of specific jurisdiction, that's not required. It's enough for Congress... But that makes this case a lot different than in Wally, right? It's different from Walden, but it's different from Walden in another... Not Walden. In Wally, Bin Laden. It is different from Wally in that respect. But to be clear, the ATA wasn't intended to address only attacks on U.S. embassies. It was intended to protect, provide justice for any American national injured by an act of international terrorism. And it's well within the power of the federal government to protect... And it's, in fact, the federal government's responsibility to protect U.S. nationals wherever they may travel. And that's really different from... But Congress doesn't have the ability through legislation, no matter how... No matter the intent to alter the Constitution. No, it does not. So Congress may very well have intended a broad sweep in the ATA, which it did, but that doesn't address the issue before us, which is what does the Due Process Clause mean here? Congress, of course, cannot override the Constitution. However, if the court is going to look to the Constitution to largely leave a legislative statute ineffective, which is what's happened here, I think it's critical that the court consider the federal interests involved in these cases. Ineffective. That's a bit of an overstatement, right? It's not... The ATA is not ineffective. Ineffective in the paradigmatic cases for which it was intended. The record, when Congress passed the ATA, the record was filled with references to the Leon Klinghoffer case, which was the American national killed by the PLO. That was forefront in Congress's mind in passing this. And so to then turn around and say, well, you can't actually use the ATA to bring the PA or the PLO to justice is a big statement. Can I take you back for a moment? Because I'd like to go sequentially. Your first argument, of course, is that due process doesn't apply at all based on price, right? That's correct. Before we even get into... I think I admire the fact that you said your specific jurisdiction argument was stronger than the general. But we haven't gotten to that unless we say due process applies. Your argument is price. That's right. Which I have to accept. Suggests that the PA should be regarded the same as a foreign state that is recognized, right? That's correct. Isn't it fair to say that price... Are there any other cases in which a state, an organization, a political organization, that is short of a recognized state or a state of the United States or a wholly owned subsidiary of a state, is there any case holding that a group of people are not entitled to due process other than the ones that fall in that category? Well, there are cases involving the PA's predecessor, the Palestinian Information Office. Well, those cases are arguably obviated by other subsequent cases. Well, they have not been overruled. Explicitly. Explicitly, right. But there are no recent cases. Well, I wouldn't know... Wouldn't it be fair then to describe price as an exception? It's an exception to the general due process doctrine that if a group of people are hailed into a federal court, they have due process concerns about whether there's personal jurisdiction. And the only exceptions are states of the United States or territories with sovereignty or foreign sovereigns recognized as such. Well, I mean, the territories like Puerto Rico and Virgin Islands are not sovereign, and yet... Well, they are for some purposes. For some purposes, but the Supreme Court recently held that for purposes of double jeopardy... They're not. They're not. So the Supreme Court cases are all over the lot on that, on the Virgin Islands and... I think what might be most relevant in terms of recent case laws, this court's recent, 2001 decision in National Council of Resistance of Iran, in which case there were organizations that did not have due process in that case, but the court noted that if the organizations interacted and were treated, interacted with the U.S. as if it were a foreign government... That was old dicta. More recently, we have Tommazoo, right? That was only a per curiam judgment, but it was clearly based on the notion that there were due process rights. It was assumed, but in the district court, the plaintiffs in Tommazoo conceded or argued that the defendant, this alleged government, was an unincorporated group of individuals. It did not pursue the line that it was a government, so the issue was not even raised there. The PA not only doesn't have sovereignty vis-a-vis the United States, it doesn't even have clear territorial limitations, does it? I was trying to understand exactly the scope of the writ, the political writ of the PA, and it's a little confusing, isn't it? Well, the PA, and I see I'm going into my rebuttal time, but I'd like to answer. The PA does have territorial authority over the West Bank and the Gaza Strip. The whole, but are there all these settlements which are not... Well, it's non-sovereign authority. And then there's a whole slew of territory next to the Jordan River in which the PA does not have authority. Did you say they didn't have sovereign authority? That's right. The PA is not a sovereign, but to get back to the price... It doesn't even have political authority in a clear... Well, it does have, it is the official governing authority of the West Bank and Gaza Strip under the Oslo Accords. But to get back to this court's decision in Price, there's nothing in Price that restricts the holding to only sovereign governments. That's an exception. Listen, what animates Price? What is the principle that we take away from Price beyond the fact that Libya is not a person? Beyond that, what's the principle behind that? So Price's holding was animated by a couple of factors, which apply equally here. First, the Due Process Clause is meant to protect the individual liberty interest against a government, not one government against another government, because there's plenty of recourse for governments in the international arena. And indeed, the PA takes advantage of those. It's signatory to 39 treaties. It participates in the UN. It has a diplomatic presence here. All of those factors apply. So it's government. It acts as a government, so it doesn't need the protection of our constitution. Does ISIS get due process rights? If ISIS holds itself out to be a government... Which it does. ...and would like the advantages of being a government, then it also has the responsibilities, which it should not be cloaked with due process protections under our constitution. Suppose an organization appears in Nigeria, as has happened, and it occupies a certain measure of territory, and it asserts political authority. Should that be treated like a state? If that organization holds itself out to be a foreign government and an aspiring state, then there's no reason... Well, that happens all the time. Your suggestion is, any time there's an insurgent who gains hold of some property and asserts political authority, it is equivalent to a state. If it holds itself out that way, it should be treated as a state. There's no reason to grant it... The answer to my question is yes. Yes, it shouldn't be granted protection under our constitution. There's an enormous, enormous expansion of price, is it not? But it does seem... That has awesome implications with respect to a confused world where there is often a group, a political group, that gains control of an area of territory of a country and asserts a rebellion. And once they're sued, your view is they have no due process. That's how we... They're treated the same as a state. Well, it certainly makes sense under price. I mean, in price as well, this court reasoned that if we grant due process rights to a foreign government, then that could restrict U.S. ability to freeze assets and impose sanctions. Your answer to my question is, any group that asserts political authority in some segment of territory somewhere in the world is treated like a state. For the purposes of the constitution, yes. Now, Congress has the legislative... It might come up with a legislative solution if it wishes to provide protection for those foreign actors. But I also want to note, in this case, it's clear, there's no dispute that the P.A. is a foreign government. And so if the court wished to take a narrower approach, saying we look at sort of the functional test of if they are acting like a government, if they're administering services in the territory... So are you contending that the P.A. is a juridical equal to the U.S.? It certainly behaves like one and is treated like one by the United States, with the exception of recognizing it as sovereign. That's a pretty big exception, isn't it? Well, but if you compare... You know, the case law really breaks down between are you like a government or like a private actor? Private actors are not getting billions of dollars in aid from the foreign government, are not signatories to international treaties, don't participate in the U.N. Incidentally, the fact that it gets a lot of money from the foreign government tends to hurt you on the specific jurisdiction question of balancing tests, doesn't it? I don't think it does. I know the P.A. makes a lot about how that shows that the U.S. interest is in supporting the P.A., but the definitive U.S. interest here are the words of the A.T.A. It's not, you know, an assortment of quotes that one can collect from various administration officials. Well, the A.T.A. doesn't explicitly address this issue. Well, it addresses those who engage in international terrorism. It was designed in mind to address Palestinian terrorism, and so it's clearly meant to address this type of situation. Can I go back to something you said about price? I'm still struggling with why it is that a state does not get due process protections. What's the thinking behind that? The thinking is... And it's based all on... I mean, the word in the 14th Amendment, the 15th Amendment, is person. Right. If you're a person, you get due process protections. And that extends to corporations because they're often treated as persons. But a government doesn't have an individual liberty interest that needs to be protected against another government. And the court also noted that, you know... So how far does that go? Right now we're talking about personal jurisdiction, the protection that comes to an entity under personal jurisdiction. But that's not the only element of the due process clause. How far does that go, this lack of the due process clause applying to other states? How far does that go? What's the limit on that? Well, they're not considered persons, so they simply aren't entitled to due process protections. At all? We're just talking about personal jurisdiction here, but you're saying at all? So due process protections. That being said, there are courts that have held, in the context of municipalities or even the federal government, that even if a litigant doesn't have... No due process protections at all? Again, the context here is personal jurisdiction. Well, certainly there would need to be a legislative hook for personal jurisdiction, and there is one here. There's a long-arm statute. There are other parts to the due process clause besides the jurisdiction, and that's what I'm getting at right now. And I'm just trying to understand. Right. What are the limits? A state is here and they don't get to cross-examine witnesses? So courts have held that once a state is here, or another party that doesn't have due process rights, there is still an issue of fundamental fairness. The rules of court still apply because those apply to all litigants, regardless of whether they're people under the due process clause or not. And that's not captured in the due process clause? What you're saying is there's fundamental fairness concerns beyond the due process clause? Certainly beyond jurisdiction. Derived from the due process clause, but apply even to those without due process rights because they govern the conduct of United States courtrooms. Isn't the answer to Judge Griffith's question about price, which was a good question, the key that limits due process to a foreign state is the analogy to American states. That is the logic of price. That's right. It's an implicit logic. It is. That if we don't grant the states of the Union, which are part of our constitutional fabric, due process rights, why would we grant them to foreign states? I understand that, but the point is the states don't have liberty interests that need to be protected in the courts. They can protect them elsewhere. Is that the idea? That they are sovereign within their own territory, but it's motivated largely by federalism concerns. We don't want one state encroaching on the power of another state. But the concern about what's left if we take away due process rights from a foreign state, in some ways that's a question that's already occurred, right? So a foreign state currently doesn't have due process rights, and yet we don't see, largely because Congress has decided to step in and grant sovereign immunity in most cases, not all, but we don't see states being treated very unfairly in the courtrooms. We don't see a run on their rights, their courts. There's nothing unfair happening. And so it's really kind of the tail wagging the dog. The concerns aren't really playing out and shouldn't animate us granting constitutional rights to an entity that historically hasn't had them. And the reasoning of price applies just as clearly, too. Great. We'll give you back time. Thank you. Thank you. Mr. Berger, good morning. Good morning. May it please the Court, Mitchell Berger for the Palestinian Authority. I have planned to proceed sequentially, as Judge Silverman suggested, but I'd also like to address the Court's questions. I think most of them fall into the due process realm. So I'll start there because we too have four elements, due process, general jurisdiction, specific jurisdiction, jurisdictional discovery. One of the points that Appellant keeps making is that this is an issue of first impression in the circuit. It's decidedly not. Every case that they cited as an exception actually stands for the rule of price. So, for example, the Palestinian Information Office case in which Judge Silverman sat on the panel actually extended due process to the foreign mission of the Palestinian government, even though, as Judge Silverman noted in his concurrence, it was undisputed in that case that the Palestine mission to the United States had privileges and immunities under United States law. That gets to your question, Judge Griffith, about the animating principle of price. When all is said and done, the conclusion about juridical equality is that there's a bundle of rights that defines juridical equality, whatever the Palestinian government has, both in 1988 when the Palestine Information Office case was decided and today that bundle of rights falls short of sovereignty. It's the same point that would apply to an instrumentality of a foreign government. It has certain rights under certain circumstances, an instrumentality of a foreign government, can claim immunity under the Foreign Sovereign Immunities Act, but it's not enough to equal juridical equality. So what is the key to your argument on sovereignty? U.S. recognition? Is that the key? It is that U.S. recognition equals certain consequences. So, yes, the premise. Due process, of course, is a status-based right. So as your point, if there was not recognition of a foreign entity, putting aside what that entity is, it would not have sovereignty. Correct, and I think the National Council case stands for exactly that process. Is that North Korea? Does it have sovereignty? Yes, that's a good question. Does North Korea have sovereignty? Yeah. It certainly is a member of the United Nations, the United States. We don't recognize. We don't recognize. We didn't recognize China for a long time, didn't recognize the Soviet Union. And Russia was not recognized until 1933. My answer to that would be, of course, in terms of premises on which we all can agree, is that the executive has sole authority on this. The fact that North Korea is designated as a state sponsor of terrorism by the State Department, as it is, would suggest that for these purposes, North Korea is a state unlike Palestine. The interesting thing is, this is an anti-terrorism act case. No, wait a minute. Stop for a second. Just the hypotheticals that both Judge Griffin and I suggest, Russia prior to 1933, China prior to recognition, Cuba, North Korea, these are all states, are they not? Notwithstanding the fact that at the time they were not recognized by the United States. I think you're proving my point with your question, Judge Silverman. I am. I thought I was making it hard for you. I'll have to rephrase that. All of the law on sovereign immunity, which turns on recognition as of the date the lawsuit is brought, there is a fair number of cases dealing with Russia that say, wait a minute, during a time when it was an unrecognized regime, they wouldn't have been entitled to sovereignty, but yet this lawsuit has been brought after. Well, now we're asking this question. The issue is, is the key recognition or not? And we see a number of cases where there was no recognition, and yet it looked to us like they were, in fact, states. So what I would say is yes to your question with this explanation, if I may, which is that it's recognition is the first part of the equation. It's what recognition equals. Recognition equals comity, and it equals sovereign immunity. So is it a fair way to describe it? Recognition is a factor to be considered, but it cannot be decisive because there are circumstances in which the government, the United States government, does not recognize a foreign state, and yet it would be a foreign state for purposes of the jurisdiction. No, I wouldn't go that far, with all due respect. I think what I'm talking about is that recognition is what sovereignty means. It is sovereignty that is the test under price, and it was explicated in the cases that follow. Let me give you what I think is correct. In World War II, we continued to recognize the Dutch government in exile. Was that a state? It was a government in exile, not a state, for purposes. In other words, the state was the state occupied by Germany. No, I don't think so. I think it was. It was one or the other. Well, it is probably one or the other, and I don't really know the answer to the Court's question, but I also don't think it drives the result here because what I do think drives the result is. All I'm suggesting is that recognition may be a factor. It cannot be decisive. But I have not found in any of the cases any factor other than sovereignty. You know, if we were to go, you're not saying we will. We have to write an opinion, right? And price is the precedent we have to follow, and we would have to see something more than, you know, the PA doesn't look like Libya, right? Because that's all we know so far. We're trying to get at what is the principle that governs price, and in your briefing I thought your suggestion was that recognition by the executive is an indispensable element of that, and yet that can't be the case if we're going to allow North Korea, Cuba, China, if we're going to acknowledge and the Soviet Union were states, were sovereigns, without recognition by the executive branch. I guess I would like to come back to the premise of your question. First of all, I think our argument is not recognition. Our argument has always been sovereignty. Recognition is the test in the United States for sovereignty. Every case that has followed. So you're saying, okay, so if there is no recognition by the United States, then there is no sovereignty? Not in a United States court, and that's all that matters for present purposes. So, for example, in the TMR case. And so the cases are then China would not be, would not, China would have due process, before recognition, China would have due process rights. Right. It's a binary world. Either there's sovereignty and immunity and you fit within the construct of the Foreign Sovereign Immunities Act. I mean, if the court is looking to explicate a rule, I do think the binary explanation is the one that works, which is if you are a state as defined under the Foreign Sovereign Immunities Act, then, of course, you're not a person for purposes of the due process clause under Price. You then get the protections of the Foreign Sovereign Immunities Act, which is functionally a set of safeguards that works like due process. If you are not a foreign state, which in the United States depends upon recognition. So you're saying the Constitution depends on the existence of the Foreign Sovereign Immunities Act? No. I think it depends on what the definition of a person is, and I think it's within the pen stroke of the President of the United States to declare somebody not a person if they're recognized as a foreign state. So if the administration, you know, got upset with, let's say, Sweden and said, we're no longer recognizing Sweden and here's an executive order to that effect, then all of a sudden Sweden is a person. It becomes a person for purposes of the due process clause. It doesn't matter whether Sweden operates like a government. TMR, this Court's decision on TMR, which immediately applied Price said, we reject use of the core functions test for determining due process. It doesn't matter if you look, walk, and talk like a government. That certainly is a convenient way for administration by the Court, but where's the law that supports that? Show us the case that says that. I think there are four cases that stand for it, and it goes back to Judge Silberman's wife. None of them say it, though, right? You said they stand for it. Excuse me, I apologize. I think they all stand for the same proposition, and Romarm, on which Judge Silberman sat on the panel, is the most current explication of the Price rule, and it, too, speaks in terms of foreign sovereignty. Our position is quite clear. Sovereignty is what matters. To Judge Wilkins' question, sovereignty is recognition in the United States that the executive, as we know from the United States. Now, that's your argument about sovereignty, but where is law that tells us that an indispensable element of sovereignty is recognition by the executive? So I think in several cases, if I could, Judge Griffith. First of all, in Price itself, why it talks about sovereignty and why it uses the conclusion of juridical equality is that it says with sovereignty comes a level playing field of international rights. Comedy is extended. There are rights to be able to deal state to state in resolving problems. Libya could not have done that had it not been recognized by the United States. I mean, we're talking about recognition by the United States. We're one player in the international field. The Palestinian Authority has lots of relationships with lots of different countries. They just don't have recognition by ours. And I think you've put your finger on it, Your Honor, which is all that matters for purposes of the Due Process Clause for this case and cases like them is what is the recognition status in the courts of the United States. It doesn't matter that Palestine is recognized by more than 100 other countries worldwide as sovereign because the United States doesn't recognize them. The upshot of recognition by the executive is we wouldn't be standing here today because the anti-terrorism act. So if we recognize a government with respect to a nation and the government is in exile, it has no connection with the territory in question. It's in exile, but it still has a recognition. Then it is a state for purposes of price. What I would do is tweak your question by giving you this answer. Wait a minute. Just answer my question. No tweaks. The answer is if the United States treats the government in exile as a sovereign, then it is outside the ambit of due process and in the ambit of the Foreign Sovereign Immunities Act, and the National Council case says exactly that. It says we are dealing with the purported self-proclaimed government in exile. And the argument by the United States government in the National Council case was that due process doesn't extend. This court said that's ridiculous. Just because they call themselves a government, just because they claim they are the government in exile, doesn't matter unless there is, and this is the court's words in National Council, the relationship of two sovereigns. Again, to Judge Griffith's question, the test is sovereignty, and all that matters in a United States court is whether the United States recognizes them as a sovereign. And again, your authority for that, that last point, that the only thing that matters is recognition by the executive, what case do I read to find that? The treatment as a sovereign is what I'm using as a cognate for recognition by the U.S. executive. Zivotofsky is the case, of course, came out of this court that says the executive threshold. Yeah, I know it came out of this court. I was aware of that. And came back. It came out of this court with a thud. That was unfair. Zivotofsky is the case. And, by the way, adopted by the Second Circuit of Sokolov that Zivotofsky is what drives the answer to the question. Zivotofsky recognizes, to Judge Wilkie's question, that it is up to the executive to decide how we treat these powers and whether they're regarded as sovereign or not. And because it is up to the executive alone, it really doesn't matter what the United Nations does. Believe me, I'd be thrilled if recognition by the hundred other countries of the United States already mattered here. Because you don't have a limit of time. Let's go to the due process inquiry, both general and specific. Do you agree with Appellant that her stronger argument is specific jurisdiction? On a relative basis, I think it's stronger because I think the general jurisdiction argument is a slam dunk. Because you think at home is the key there. I think there's no doubt that it's the key there. And, again, I don't think this is an issue of first impression. The Mwane decision, if it means anything, is that due process applies and that 14th Amendment due process, jurisdictional due process tests, govern in a Fifth Amendment terrorism case. It would be upsetting everything that Mwane held to hold to the contrary. What about the argument that the Fifth Amendment somehow is broader in conceptual as opposed to just geographical terms than the 14th? I think I like Judge Griffith's answer to that one, which is that one is water well under the bridge. This Court, in the SEC versus Bilzerian case, held that other than the geographic scope, there is no difference between the 14th and the Fifth Amendment. The Second Circuit in Sokla said, and it would apply equally here, we'd have to undo an awful lot of law. The Eleventh Circuit has a different view, Judge. The Eleventh Circuit has a view that somehow under the Fifth Amendment the test is reasonable. I think Your Honor is referring to the BCCI case, the Republican Panama case. That one, I don't think I'll say it's ancient history, but I think law has moved on quite a bit since then, and I don't think there's really any dispute that Walden and Daimler provide the current tests. So let's go to Walden, the specific jurisdiction, okay? So on specific jurisdiction, again, I think Mwane gives you the result. Mwane was a specific jurisdiction case. It was, and I think this was Judge Griffith's question at the outset, it was a case where this Court led with the conclusion that what was pled there was an ongoing conspiracy to attack the United States. In retrospect, of course, those facts were proven to be true because it talked about Al-Qaeda's war against the United States. There's nothing close to that in the complaint here. This is an analogy, a little bit of ancient history. Their causation for it. What about their argument in the specific jurisdiction, you focus on the defendant's relationship to the forum, and here we should look to national interest, and therefore we should look at ATA. The ATA is a key expression of national interest, and therefore we should see that as reflecting a support for specific jurisdiction in this case. Well, it's not a monochromatic national interest. The ATA is certainly relevant to national interest, but in this area of the law, as this Court knows far better than I do, national interest as expressed by Congress bump up against the Constitution every day of the week, and it's why this Court has spent so much time in everything ranging from the military commissions to cases like this to try to figure out where when legislative intent bumps up against the Constitution something is limited. But here it's easier because the United States, not only in the statement of interest in the Socolow case, but in the Bernstein v. Kerry brief, in this Court said, wait a minute, it's not a one-sided battle. The Palestinian Authority of the modern era, which is what we're dealing with here, forget Klinghoffer, that's ancient history, the Palestinian Authority of the modern era is a partner for peace with the United States in the Middle East, an important stabilizing force, and that is an important national interest that gets folded into the Walden test, and oh, by the way, also precludes the kind of imaginative declaration from Professor Atikot, which is rooted in ancient history. It talks about events that stopped in 2004 when Yasser Arafat died. This is a 2011 terrorist attack. As Your Honor knows from other things in the past, in foreign policy, seven years is light years, and when the plaintiffs are rooted in the Yasser Arafat era, but we're talking about national interests of today. Does the PA guy have a relationship with Hamas? Does the PA have a relationship with Hamas? I think the answer to that is they do have a relationship. It's a terrible one. But they're fused, are they not? No, they're not. Quite the opposite. Not only is Hamas not part of the Palestinian government, but United States aid to Palestine, which the Palestinian Council talked about, by legislation is cut off if Hamas ever joins a government with the current Fatah policy that is running the Palestinian Authority. So the answer on that is decidedly no, and I think Your Honor is probably aware from the newspapers that the municipal elections in Palestine have just been suspended by a court, and Hamas is claiming that this is an effort to keep Hamas out of the government. Hamas is not in the government, part of the reason why the Palestinian Authority If Hamas were in the government, would your case be different? I don't think my case would be different. I think the national interest might be judged differently. So wouldn't that change your case? Well, my case is based on the current statement of the U.S. government. I understand, but going forward, would it change your case? If hypothetically the United States government said, A, Hamas has entered the government, and B, as a result of that, we no longer regard the Palestinian Authority as the close friend that we do, yes, my case would be different, but that's, of course, not our case. I'm happy to address any of the remaining questions that the Court may have. I don't think I got sequentially beyond number one, maybe a little bit to number three, but, of course, I'm here to assist the Court in any way. Thank you very much. I want to follow up on a couple of points. First, the Court is right that there is nothing in Price that points to a sovereignty or government recognition test. Instead, Price talks about a number of factors that animate when a foreign government First of all, even just looking at the language of Price, the Court says that it's holding extents to, quote, an actual foreign government. It doesn't say only one that's sovereign. That's an exception the PA is trying to read into it. But more than that, the reasoning of Price, if you go through each factor, the text of the due process clause, the history, the tradition, the policy, all of those apply here, and if the Court is uncomfortable with a broader test saying that when a government declares itself a government, we treat it as one for purposes of due process, If I start a government in a small country in Africa with 100,000 persons and I have a geographical area, under your view, I'm a state. Not that you're a state, but that you're not entitled to due process rights because you carry on an international arena as a government. Any government, therefore, is covered by Price. Any government, whatever the size of the government. We believe that's the case, but if the Court wished to rule... You believe that? That's your rule? Yes, because they interact in the international arena as a government. They don't need to protect themselves. Why wouldn't ISIL be covered as a state? Not as a state, but as a self-proclaimed government. There's no reason we need to cloak ISIL as constitutional protections. So ISIL would not have due process? No, we don't believe that ISIL should have due process rights. It doesn't have an individual private act or liberty interest against the United States. However, if the Court wished to rule more narrowly, it could go through the reasoning of Price. The PA satisfies all of it because it conducts itself like a foreign government. It interacts with the United States as a foreign government. Whereas ISIL probably would not meet that test. That's a narrower ground for finding that Price applies here. I would just note on the issue of sovereignty as well, we know that this test of if you're sovereign, you don't have due process rights, but if you don't have sovereignty, it can't be right because the Foreign Sovereign Immunity Act, under that act, Congress can withdraw, it can abrogate sovereignty in certain circumstances. And under the PA's argument, if Congress withdraws sovereignty for certain types of cases from a state, does that mean they suddenly get due process rights? The applicability of whether you're a person, for persons of the Constitution, can't depend on an act of Congress. We've really narrowly construed Price to limit it to states that have sovereignty, right? That's right, and there's nothing in Price that suggests such a limitation. Again, it talks about actual... As a practical matter, the Court has limited, right? Oh, has limited. Yeah. I don't believe that's the case. If GSS and TMR are about whether a state instrumentality, which I'm just mentioning because other PA's noted that as limitations... But if you see Price as an exception to the general jurisdictional jurisprudence, then it would be limited to a state that has sovereignty. Would, incidentally, would Libya now, today, have the same status? Libya, as a government, would, even though Congress has abrogated or had in the past abrogated sovereign immunity. What happens with a failed state? If, again, you can hold them against the Price factors and say, are they interacting in the international arena? Do they have other forms for redress? Are they a member of the ICC, like the PA? Or you can say, if this entity is holding itself out as a government of a state, it's an aspiring sovereign state. Your theory is it's holding itself out as a government. That's enough. It is. It is. It doesn't have to have a state. It doesn't have to have a territory. That's right. Is that correct? It doesn't have to have territory. That is correct. Now, you can argue that a government has... Now you're taking Price and broadening enormously. Well, you can say that government, by definition, tends to have a territory. So any organization claiming to be a government would normally claim to have... I could have 25 judges and be a new government somewhere in Africa. Again, if this test, you know, we believe that this is the best standard because if you're holding yourself out to be a government, there's privileges that come with that and there's responsibilities. But, again, you can go through the steps of Price, and it applies to the PA, but it would not apply to ISIS because ISIS is not a member of 39 treaties. It's not acting. It doesn't have a diplomatic presence. To jump back to the if there is your process... The specific jurisdiction. The specific jurisdiction point. What's your best argument there? Our best argument... Look at the Supreme Court case in Jane McIntyre. The Supreme Court talks about the liberty, interest, and due process. It's not in a vacuum. It's in relation to the authority of the sovereign. And here, the authority of the sovereign is the federal power, and the federal power, not the state, has the power and the responsibility to protect its citizens. States don't have to worry that, you know, if a citizen has to sue in Georgia instead of Nevada, that it's not going to be treated fairly. Whereas here, the U.S. does have to worry that U.S. nationals harmed in international acts of terror have no forum if the U.S. doesn't provide it. In a specific jurisdiction, you have to look at the particular facts in this case, right? That's right, but in any ATA case... So our case has additional facts that bolster our specific jurisdiction argument, namely that the PA's policy was designed to influence the United States. But on that, your contention is almost diaphanous. All you have is this professor at St. Mary's College, is it? But again, this was decided on a motion to dismiss. We asked for jurisdictional discovery. It was denied. Furthermore, we allege in the complaint that this was part of a PA policy or practice... Do you think the allegation alone gets you... Well, no, but the allegations related to the substance of our claim, and so it's intertwined with substantive issues. And under the case law, the court should have deferred ruling. At the very least, should have deferred ruling on this until the substantive issues were resolved, and we did have a chance to find evidence or to present evidence showing exactly how the PA intended... Well, don't you have to have more than what you had initially to show the connection between the defendant and the forum? Well, again, under the Fifth Amendment, no. I mean, well, the connection, first of all, is... You have to have a connection, right, between the defendant and the forum? And your answer is no, not under the Fifth Amendment? Under the Fifth Amendment, it's enough here, given that the nature of the tort is terrorism, and that the U.S. interest is so strong... What is your standard under the Fifth Amendment? In this case... No, no, what's your general standard under the Fifth Amendment? You said the Fifth Amendment has got a more relaxed standard than the 14th. It's not even that it's more... It's just you balance the federal interest and taking into account the federal authority, you consider the nature of the tort, which... Well, okay, now federal authority, we give millions and millions of dollars to the PA. So why is it in the federal interest to have a lawsuit against the PA that would just take the federal money and divert it to a plaintiff? Because the definitive statement of U.S. policy on this is the text of the ATA. I mean, there's other... Well, there's not... There's U.S. policy also in the executive branch, too, isn't there? And that was a... Wasn't that an issue in the case that Judge Griffiths referred to earlier? But there's contradictory... So with that authority, I mean, if you're going to... Listen, if you're going to give decisive weight to various statements of administrative officials, administration officials... Well, in the past, Secretary Rice said that the PA should defend these lawsuits. And so there have been inconsistent messages on that. And to be clear, it's not even that they're inconsistent. The U.S. most recently in Sokolow weighed in about the size of the bonds, not about the underlying merits of whether the PA should answer in court. They took no position on that and haven't taken a position on that. And so I think the definitive statement here really is the text of the ATA, which was passed by Congress, signed by the president. That's the statement of U.S. policy here. If there are no further questions, I will thank the Court for its attention. Thank you very much. The case is submitted.
judges: Griffith, Wilkins, Silberman